# SURFACE TRANSPORTATION BOARD
*Office of the General Counsel*
*Washington, D.C. 20423-0001*

*Tel: (202) 245-0260*
*Fax: (202) 245-0460*

January 6, 2010

Catherine O'Hagan Wolfe
Clerk of the Court
U.S. Court of Appeals for the Second Circuit
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

RE:   *Mitsui Sumitomo Insurance Co., Ltd v. Evergreen Marine Corp.*, USCA #08-5184-cv

      This letter brief responds to the Court's request that the Surface Transportation Board address the interplay among three provisions of the Interstate Commerce Act (ICA): 49 U.S.C. §§ 10502 (the exemption provision), 10709 (the contract provision) and 11706 (the cargo liability provision, or "Carmack"). As it was not part of the request, we express no view on the threshold issue of whether Carmack applies to the inland portion of a shipment from overseas moving under a through bill of lading.

      To summarize, it is the Board's view that rail carriers transporting exempted traffic may not currently use section 10709. After 1976, the agency began exempting certain transportation from *all* parts of the ICA except Carmack and employee protections. Thus, traffic that the agency exempted is no longer subject to section 10709. The exemption at issue here permits rail carriers handling containerized intermodal traffic to enter into any kind of arrangement for that transportation they wish, except that rail carriers handling this traffic remain obligated to offer contractual terms consistent with Carmack as directed by section 10502(e). Any other interpretation of the scope of the exemption would render the protections of Carmack for exempted traffic and the limitation in section 10502(e) practically meaningless.

### BACKGROUND: STATUTORY PROVISIONS

      There are three provisions of the ICA that are relevant here. The first provision is the Carmack Amendment, enacted in 1906. *See* 49 U.S.C. § 11706 (formerly 49 U.S.C. § 11707). It establishes a uniform liability regime for loss or damage to cargo during rail transportation, including joint and several liability of the rail carriers involved, at full value, for the actual loss or damage to the cargo. At the same time, Carmack provides that rail carriers may limit their liability in advance (in so-called "released rates") to a shipper-declared value or some other specific value set by written agreement. 49 U.S.C. § 11706(c)(3). To limit liability under Carmack, courts have long held that a carrier must offer the shipper "the option of full Carmack coverage, which includes the Carmack version of strict liability and full coverage." *Sompo Japan Ins. v. Union Pacific*, 456 F.3d 54, 59-60 (2d Cir. 2006); *N.Y., N.H. & Hartford R. Co. v.*

1



*Nothnagle,* 346 U.S. 128, 135-36 (1953). Subsection (c)(1) provides that attempts to limit liability in "a receipt, bill of lading, contract or rule" in violation of Carmack are void.

The second relevant provision is the agency's exemption authority. *See* 49 U.S.C. § 10502 (formerly 49 U.S.C. § 10505). This provision directs the Board to exempt services from application of the provisions of the ICA where the Board determines that regulation is unnecessary. Over time, the agency has exempted from regulation the transportation of particular commodities (*e.g.*, motor vehicle parts and accessories, 49 CFR 1039.11) and certain types of transportation (*e.g.*, containerized intermodal traffic, 49 CFR 1090). Although the agency retains jurisdiction over exempted transportation and can revoke an exemption at any time,[1] unless limited by the express language of the exemption itself, a commodity-specific or service-specific exemption "generally excuses carriers from virtually all aspects of regulation involving the transportation of that commodity." *Pejepscot Indus. Park, Inc. d/b/a Grimmel Indus. – Petition for Declaratory Order,* Finance Docket No. 33989, slip op. at 6 (STB served May 15, 2003); *see also* 49 C.F.R. 1300.1(d) (common carriage rules do not apply to exempted traffic). In 1980, Congress expressly precluded the agency from exempting carriers from "an obligation to provide contractual terms for liability and claims which are consistent with [Carmack]." 49 U.S.C. § 10502(e). But carriers providing exempted transportation may also "offer[] alternative terms" to those required by Carmack. *Id.*

The third relevant provision is the rail transportation contract provision. *See* 49 U.S.C. § 10709 (formerly 49 U.S.C. § 10713). When this provision was introduced in 1980, it authorized rail carriers to enter into rail transportation contracts, subject to a filing requirement and, in certain circumstances, approval by the agency. Of importance here, such contracts "shall not be subject to this part [49 U.S.C. §§ 10101 – 11908], and may not be subsequently challenged before the Board or in any court on the grounds that such contract violates a provision of this part." *See* 49 U.S.C. § 10709(c)(1). The Board has no authority to regulate the rates and services for transportation provided under a section 10709 contract, and the agency's rules applicable to common carriage do not apply to section 10709 contract traffic. *See* 49 CFR 1300.1(c). In 1995, Congress removed the requirement that non-agricultural contracts be filed with the agency and approved before they could take effect. *Compare* former sections 10713(b)(1), (c) and (d) *with* current section 10709 (a)-(c).

BOARD'S INTERPRETATION AND ANALYSIS

### 1. Section 10709 Contracts Are Not Subject to Carmack

In the Board's view, if a shipper and rail carrier enter into a contract authorized by section 10709, the contract cannot be challenged as conflicting with Carmack. There is no indication that Congress intended to engraft Carmack *sub silentio* onto services provided under section 10709 contracts. Rather, a section 10709 contract relieves carriers from responsibilities under the ICA, of which Carmack is unquestionably a part. In other words, a shipper and carrier

---

[1] *G&T Terminal Packaging Co. v. Consolidated Rail Corp.*, 830 F.2d 1230, 1234-36 (3d Cir. 1987); 49 U.S.C. 10502(d).

are free, in a section 10709 contract, to opt out of Carmack and agree to any liability provision that is mutually acceptable.

Nothing in the legislative history undercuts this plain language interpretation of section 10709. Indeed, the legislative history of the contract provision is silent as to Carmack. This silence can be contrasted with statements that carriers entering into section 10709 contracts remain subject to the common carrier obligation with regard to their other traffic not moving under contract, and the reservation of the agency's war-time powers.[2]

There is some superficial conflict between the language of section 10709 and that of Carmack. An attempted limitation of liability in a "receipt, bill of lading, *contract* or rule" in violation of Carmack is deemed void. *See* 49 U.S.C. § 11706(c)(1) (emphasis added). But this provision must be read in historical context. In 1906, when the contract reference first appeared, there was no conception of a contract that would be expressly excused from complying with the entire ICA. Moreover, the bill of lading itself was considered both a receipt and a contract. *See, e.g., Northern Pacific Ry. v. Wall*, 241 U.S. 87, 91-92 (1916). Because section 10713/10709 was enacted long after Carmack and with Congress's full knowledge of the Carmack contractual limitations, it would be anachronistic to view that language as indicating any intent that Carmack should limit the stated breadth of the newer section 10709 contracting rights with no Congressional mention whatsoever.

This is not to say that shippers of non-exempted commodities lose the protections afforded them by Carmack. Such shippers can insist that the carrier offer common carriage terms and conditions in a tariff, under which the shipper would have full Carmack protections, rather than agreeing to move their traffic under a section 10709 contract.

## 2. Contracts for the Transportation of Exempted Traffic Are Not Section 10709 Contracts and Must Comport with Carmack

The more complex question is whether rail carriers can avail themselves of section 10709 when the transportation in question has been broadly exempted from all parts of the ICA except for Carmack. This is an issue of first impression for the agency. In *Norfolk Southern Ry. v. Kirby*, 543 U.S. 14 (2004), the Board joined an *amicus* brief filed by the United States that assumed that the exempted intermodal traffic could move pursuant to a section 10709 contract.[3]

---

[2] For Board jurisdiction on non-contract traffic, *see* section 10709(f); House Conf. Rep. No. 1530 (1980), *as reprinted in* 1980 U.S.C.C.A.N 3978, 4132-33 (Staggers Conf. Rep.). For war-time powers, *see* then-section 10713(g) (referring to the agency's powers under former section 49 U.S.C. 11128); Staggers Conf. Rep. at 4132.

[3] The *Kirby* brief cited data showing that a significant volume of exempted traffic moves under contract. The Board's "waybill" data, generated from reports by the largest carriers, lets those carriers identify movements made under a "calculated rate," i.e., a rate designed to mask confidential contract information. The waybill data does not collect information on whether a calculated rate refers to a section 10709 contract versus some other type of contract under which exempted traffic can move.

3

The statement was an ancillary point in the brief and did not consider the issue presented by the Ninth Circuit. We have not found any other agency statements addressing this question.[4]

Upon consideration of the agency's regulations, the ICA and the legislative history, the Board concludes that traffic covered by current agency exemptions under section 10502 cannot also be the subject of a section 10709 contract. In other words, carriers moving exempted traffic are free to contract with shippers to carry this traffic, but such contracts are not section 10709 contracts. Rather, they are contracts subject to section 10502(e). Under that subsection, the carrier must first offer the shipper terms consistent with Carmack. Once that offer has been made, the shipper and carrier are free to agree instead to mutually acceptable "alternative" liability terms.

The Board's interpretation of its exemption is based upon three principal grounds.[5] First, the language of the Board's exemption regulations exempts rail carriers from section 10709. When the agency exempts a particular commodity or type of traffic, it may limit the scope of that exemption to exclude particular parts of the ICA that it determines should remain in force. But absent any such express limitation, the traffic is no longer subject to *any* part of the ICA, with the exception of the statutory reservations contained in sections 10502(e) (Carmack) and (g) (employee protection). Accordingly, carriers moving exempted traffic cannot apply the benefits of section 10709, a statutory section from which that traffic has been exempted, without first obtaining a partial revocation of the exemption. *Accord Railroad Consolidation Procedures – Trackage Rights Exemption*, 1 I.C.C.2d 270, 279 (1985) (to obtain immunity from the antitrust laws that flows from agency approval of a transaction, carrier moving an exempted commodity must first seek a revocation).[6]

Second, the historical practices of the industry support the Board's interpretation of the broad scope of exemptions. When Congress first authorized carriers to enter into rail transportation contracts pursuant to then-section 10713, the authorization came with strings attached. For example, such contracts had to expressly say that they were section 10713

---

[4] In *Conrail – Exemption Request – Charges*, 1 I.C.C.2d 164, 165 (1984), the ICC suggested that it lacked the power to exempt under then-section 10505 a contract that was already beyond the jurisdiction of the Board pursuant to then-section 10713. But the case is not helpful here, where we have the opposite situation: whether traffic first exempted from the ICA can nonetheless use section 10709.

[5] The Board's interpretation of its exemptions is entitled to deference. *Auer v. Robbins*, 519 U.S. 452, 461-62 (1997).

[6] The intermodal exemption (referred to as "TOFC/COFC") at 49 C.F.R. 1090.2 describes the traffic as exempt from the "requirements" of the ICA, rather than the "application" or provisions of the ICA as indicated in section 10502. The Board does not construe the slight language difference between the regulation and the statute to mean that the TOFC/COFC exemption was intended to operate differently from other exemptions, which exempted particular transportation "from the provisions" of the ICA. *See Improvement of TOFC/COFC*, 3 I.C.C.2d 869, 869-70 (1987) ("We are exempting from regulation most [TOFC/COFC] services" based on determination that "application of the Interstate Commerce Act is not necessary . . .").

contracts and rail carriers were obligated to file summaries of those contracts with the agency for approval. The Board understands that, over the decades, rail carriers generally did not file contract summaries for exempted traffic. The contract summary filing requirement (as well as an ability to challenge contracts) remains today for contracts for the transportation of agricultural commodities, and the Board's current rules make clear that contract summaries for exempted agricultural commodities need not be filed. *See* 49 CFR 1313.1(b).

Finally, construing the exemption to foreclose the application of section 10709 to section 10502-exempted traffic gives full effect to Congressional intent by ensuring that shippers of exempted traffic retain the protections of Carmack. For *non-exempted* traffic, a shipper can always insist on common carriage rates and terms, which must also provide full Carmack liability protections. Shippers of exempted traffic, however, lack that option. Thus, unless the Board interprets the scope of its exemptions as foreclosing the use of section 10709 contracts, rail carriers could insist that exempted traffic move under section 10709 contracts. If that happened, shippers of exempted commodities would have lost the Carmack protection that Congress clearly intended to preserve in section 10502(e).[7]

In short, given the broad scope of the current exemption and the specific congressional directive in section 10502(e), the Board agrees with the outcome reached by the Ninth Circuit in *Regal-Beloit* with regard to the interplay between sections 10502(e), 10709 and 11706. Just as rail carriers offering contracts for the transportation of exempted traffic need not comply with any of the requirements in section 10709, they cannot avail themselves of the protections contained therein. Rather, when offering rail transportation for exempted traffic, rail carriers must offer "contractual terms for liability and claims which are consistent with the provisions of section 11706," as directed by section 10502(e).

Respectfully submitted,

ELLEN D. HANSON  
General Counsel

CRAIG M. KEATS  
Deputy General Counsel

*Anika Cooper*  
ANIKA S. COOPER  
Attorneys for Surface Transportation Board  
coopera@stb.dot.gov

---

[7] The Board offers no view on whether it could modify the scope of its exemptions to enable railroads to enter into section 10709 contracts for the transportation of otherwise exempted traffic, on the condition that those contracting railroads offer terms for liability consistent with Carmack.

## CERTIFICATE OF SERVICE

I, Anika S. Cooper, certify that on January 6, 2010, I caused a copy of the foregoing LETTER BRIEF OF THE SURFACE TRANSPORTATION BOARD to be served electronically, in a manner consistent with Interim Local Rule 25.2, on the following counsel of record in this matter:

David L. Mazaroli, Esq.
DLM@mazarolilaw.com

Barry N. Gutterman, Esq.
BNGASSC@aol.com

Joseph De May, Esq.
JDEMAY@cckvt.com

The document was also sent electronically to the attention of the Solicitor General of the United States at SupremeCTBriefs@usdoj.gov.

*Anika Cooper*
Anika S. Cooper

ANTI-VIRUS CERTIFICATION FORM

See Second Circuit Interim Local Rule 25(a)6.

CASE NAME: Mitsui Sumitomo Insurance Co., LTD v. Evergreen Marine Corp.

DOCKET NUMBER: 08-5184-CV

I, (please print your name) Anika S. Cooper, certify that I have scanned for viruses the PDF version of the attached document that was submitted in this case as an email attachment to

☐ <agencycases@ca2.uscourts.gov>.
☐ <criminalcases@ca2.uscourts.gov>.
☑ <civilcases@ca2.uscourts.gov>.
☐ <newcases@ca2.uscourts.gov>.
☐ <prosecases@ca2.uscourts.gov>.

and that no viruses were detected.

Please print the name and the version of the anti-virus detector that you used
2008 McAfee Inc. - McAfee Virus Scan Enterprise Workstation

If you know, please print the version of revision and/or the anti-virus signature files
Version 8.5.0.781

(Your Signature) Anika S. Cooper

Date: 1/6/2010