# DUTY OF RAILROADS TO PROVIDE A RATE AND/OR SERVICE – IT MAY NOT BE AS SIMPLE AS YOU THINK

**Canadian Transport Lawyers Association Annual Conference**

October 3, 2009

Peter A. Pfohl
Slover & Loftus LLP



EXHIBIT "A"

# OVERVIEW

I. OVERVIEW OF RAILROAD COMMON CARRIER OBLIGATION

II. CURRENT STATUTORY BASIS/ AREAS OF COVERAGE

III. GENERAL APPLICATION OF THE OBLIGATION IN PRACTICE

SLOVER & LOFTUS LLP

# I. OVERVIEW OF COMMON CARRIER OBLIGATION

- Historical Basis: an ancient legal doctrine, traced back to English common law and beyond
  - Common law mandated carriers "to receive all goods and passengers" – although "if his coach be full" he was not liable for failing to transport more than he could carry. *Pennsylvania R.R. Co. v. Puritan Coal Mining Co.*, 237 U.S. 121 (1915)

- Part of U.S. legal doctrine for well over 125 years

- Railroads have a "higher standard of responsibility" with regard to the provision of common carrier service because of the carriers' "quasi-public nature." *G.S. Roofing Products Co. v. STB*, 143 F.3d 387 (8th Cir. 1997)
  - Railroad right of way in many respects akin to public highways, and generally, a common carrier railroad's rates, practices, and services must be reasonable

SLOVER & LOFTUS LLP

## II. CURRENT STATUTORY BASIS

- Common carrier obligation is now statutory and obligation even broader than at common law
  - Obligation added to the Interstate Commerce Act in 1906
  - Transportation Act of 1920 subsequently "imposed an affirmative duty on the [ICC] to fix rates and to take other important steps to maintain an adequate railway service for the people of the United States." *R.R. Comm'n of Wisc. v. Chicago, B&O R.R. Co.*, 257 U.S. 563 (1922)

- Currently embodied primarily in 49 U.S.C. §11101(a) (rail carriers providing common carrier transportation "shall provide the transportation or service on reasonable request")

- Generally, applicable to non-contract, non-exempt traffic
  - *See, e.g.*, 49 U.S.C. § 10709(b) (only duties in connection with service provided under contract are those specified by the terms of the contract)

SLOVER & LOFTUS LLP

4

## II. CURRENT STATUTORY BASIS (continued)

- The Surface Transportation Board (STB) has authority to regulate a railroad's common carrier activities in various respects:

  - **Rates:** Carrier has duty to provide rates for service to any person, on reasonable request, and rates for captive customers "must be reasonable" 49 U.S.C. §10701(d)(1)

  - **Practices:** "A rail carrier providing [common carrier rail service] shall establish reasonable . . . rules and practices related to that transportation or service" 49 U.S.C. §10702
    - If STB finds that a practice is unreasonable, it can order the railroad to desist and to adopt a reasonable practice 49 U.S.C. §10704

  - **Service:** Generally, common carrier obligation includes duty to provide adequate track and other service equipment and facilities, and to provide service "with reasonable dispatch"
    - In times of temporary emergency/shortage of capacity, the common carrier obligation is generally to apportion capacity reasonably among shippers requesting service

SLOVER & LOFTUS LLP

## III. APPLICATION OF THE OBLIGATION IN PRACTICE

- The STB has implemented rules of general applicability with respect to the common carrier obligation when warranted

  – E.g., STB in *Ex Parte No. 661* determined that it was an unreasonable practice for railroads to compute fuel surcharges as a percentage of existing rates, and ordered carriers to change practices

  – E.g., with UP/SP post-merger service failures in late 1990s, STB issued emergency service orders, including allowing carriers to operate over the tracks of another, pursuant to 49 U.S.C. § 11123 (emergency service orders are authorized for a period of up to 270 days where emergency conditions exist "of such magnitude as to have substantial adverse effects on shippers, or on rail service in a region of the United States, or that a rail carrier . . . cannot transport the traffic offered to it in a manner that properly serves the public")

## III. OBLIGATION OF THE OBLIGATION IN PRACTICE (continued)

- However, common carrier obligation matters are most often decided in the context of individual adjudications.
  - The essence of the doctrine is one of "reasonableness" determined on a case-by-case basis, under a fact-specific inquiry
    - E.g., carriers "cannot lawfully make fulfilling their statutory obligations contingent upon whether they think it is 'worth it' to do so." *See, e.g., Pejepscot Indus. Park, Inc.* (STB Docket No. 33989)
  - Current hot issue: TIH movements
    - STB Ex Parte No. 677 (Sub-No. 1): AAR proposed STB issue a policy statement that it would be reasonable for railroads to require shippers of TIHs to (1) indemnify railroad for all liability in excess of $500 million and (2) require shippers to carry insurance at levels required by railroad
    - STB Finance Docket No. 35219 (June 2009): STB grants petition for declaratory order by shipper that UP has an obligation to quote common carrier rates and provide service for TIH movements.
    - Issue could ultimately be resolved through legislation, and railroads have sought relief from Congress

## III. OBLIGATION OF THE OBLIGATION IN PRACTICE (continued)

- Possible current/future issues with respect to common carrier service obligation

  – Carriers are increasingly seeking to impose various accessorial fees (e.g., surcharges, private railcar maintenance requirements, environmental mitigation, etc.) on customers which customers are concerned are a means of avoiding expenses and shifting costs

  – Carriers are increasingly refusing to provide specific service standards (e.g., cycle times) for bulk commodity customers

  – Prior to recent economic downturn, some carriers were increasingly implementing service embargos for extended time periods. (Are carriers motivated to preserve some level of shortfall in capacity and/or the curtailment of service as part of pricing strategy?)

  – Carriers may seek to impose FRA inspection requirements on shippers

  – Carriers may seek, as a precondition of service, to impose substantial destination rail infrastructure investment requirements exceeding reasonable historic requirements

  – Carriers may seek to shift liability requirements on customers