IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

SOUTH MISSISSIPPI ELECTRIC
POWER ASSOCIATION                                                          PLAINTIFF

v.                                         CIVIL ACTION NO. 2:10-CV-310-KS-MTP

NORFOLK SOUTHERN RAILWAY
COMPANY                                                                    DEFENDANT


<u>MEMORANDUM OPINION AND ORDER</u>

For the reasons stated below, Defendant's Motion to Dismiss [13] is **granted in part and denied in part**, Defendant's Motion for More Definite Statement [15] is **granted**, and Plaintiff's Motion to Dismiss Counterclaim [27] is **granted in part and denied in part**.

<u>I. BACKGROUND</u>

Plaintiff is an electric generation and transmission cooperative which operates a coal-fired electric generating station – Plant Morrow – near Richburg, Mississippi. Defendant, a railroad company, has been the sole rail transportation provider serving Plant Morrow since it became operational in 1978.

On December 21, 2006, Plaintiff and Defendant entered into a coal transportation contract in which Defendant agreed to transport coal from mines and mine origin groups in Kentucky, Virginia, West Virginia, Tennessee, and Alabama to Plant Morrow. The

1

contract became effective on January 1, 2007, and expired by its own terms on December 31, 2010. The contract provided base transportation rates for transporting coal to the plant, and it required quarterly adjustments of the base rates according to cost indices included in the contract. The contract also imposed a percentage-of-rate fuel surcharge. Prior to entering the contract, Plaintiff objected to Defendant's imposition of a fuel surcharge on top of quarterly rate adjustments and joined a group of other shippers in seeking the Surface Transportation Board's invalidation of percentage-of-rate fuel surcharges. However, despite objecting to the fuel surcharge and seeking its invalidation with the Board, Plaintiff agreed to the contract's terms.

On January 25, 2007, the Board issued a decision in which it concluded that "computing rail fuel surcharges as a percentage of a base rate is an unreasonable practice, and we direct carriers to change this practice." *Rail Fuel Surcharges*, Ex Parte No. 661, 2007 STB LEXIS 39, *1, 2007 WL 201205 (S.T.B. Jan. 25, 2007). The Board further concluded "that the practice of 'double dipping,' i.e., applying to the same traffic both a fuel surcharge and a rate increase that is based on a cost index that includes a fuel cost component . . . is an unreasonable practice, and we direct carriers to change this practice as well." *Id.* However, the Board explicitly declined to impose the new rule retroactively. *Id.* at *22-*23. It noted:

> In view of the long history of rate-based fuel surcharges in the rail industry, we do not believe that railroads can be faulted for assuming that fuel surcharges calculated as a percentage of the base rate were permissible. Indeed, in the mid-1970s, the ICC specifically declined to require carriers to

tie their fuel surcharges to mileage. Although conditions have changed since the mid-1970s, railroads may have reasonably relied on that precedent in formulating their fuel surcharge programs.

*Id.* at 22 (citing *Expedited Procedures for the Recovery of Fuel Costs*, 350 I.C.C. 563, 570-71 (1975)). Finally, the Board directly addressed whether the new rules applied to traffic handled under transportation contracts, ruling: "Under 49 U.S.C. § 10709, we have no authority to regulate rail rates and services that are governed by a contract. Therefore, our findings and actions here apply only to regulated common carrier traffic." *Id.* at *31.

On December 29, 2010 – after the contract had expired – Plaintiff initiated the present action, alleging that Defendant breached the transportation contract and its implied duty of good faith and fair dealing.

## II. MOTION TO DISMISS COUNTS I, III, AND IV

### A.    *Standard of Review*

Defendant seeks the dismissal of Counts I, III, and IV of Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), and both parties attached exhibits to their briefing on Defendant's Motion to Dismiss. "It is well known that when 'matters outside the pleading' are presented with a motion to dismiss under Rule 12(b)(6), a district court has complete discretion to either accept or exclude the evidence." *Gen. Retail Servs., Inc. v. Wireless Toyz Franchise, LLC*, 255 F. App'x 775, 783 (5th Cir. 2007) (citing *Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 193 (5th Cir. 1988); FED. R. CIV. P. 12(b)).  If the Court

considers the matters outside the pleadings, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all material that is pertinent to the motion." FED. R. CIV. P. 12(d). However, "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [his] claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004); *see also Sullivan v. Leor Energy LLC*, 600 F.3d 542, 546 (5th Cir. 2010); *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007). Further, the Court may "permissibly refer to matters of public record" when deciding a 12(b)(6) motion to dismiss. *Cinel v. Connick*, 15 F.3d 1338, 1343 n. 6 (5th Cir. 1994); *see also Hall v. Hodgkins*, 305 F. App'x 224, 227-28 (5th Cir. 2008); *Lovelace v. Software Spectrum*, 78 F.3d 1015, 1017-18 (5th Cir. 1996).

Exhibit A to Defendant's Motion to Dismiss; Exhibits 2, 3, and 4 to Plaintiff's Response; and Exhibits B and C to Defendant's Rebuttal all appear to be matters of public record. Therefore, the Court may refer to them in deciding a Rule 12(b)(6) motion. *Cinel*, 15 F.3d at 1343 n. 6; *Hall*, 305 F. App'x at 227-28; *Lovelace*, 78 F.3d at 1017-18. However, Exhibit 1 to Plaintiff's Response and Exhibit A to Defendant's Rebuttal are not referenced in the Complaint and are not matters of public record. Therefore, the Court may not consider them in deciding Defendant's Rule 12(b)(6) motion without converting it to a Rule 56 motion. FED. R. CIV. P. 12(d); *Sullivan*, 600 F.3d at 546. The Court elects to not consider

4

matters outside the pleadings, including the above-cited exhibits. Therefore, the Court will not convert Defendant's Rule 12(b)(6) motion to a Rule 56 motion.

"Motions to dismiss under Rule 12(b)(6) 'are viewed with disfavor and are rarely granted.'" *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (quoting *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 (5th Cir. 2005)). "To survive a Rule 12(b)(6) motion to dismiss, [a plaintiff's complaint] need only include 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Hershey v. Energy Transfer Partners., L.P.*, 610 F.3d 239, 245 (5th Cir. 2010) (quoting FED. R. CIV. P. 8(a)(2)). However, the "'complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Great Lakes Dredge & Dock Co. LLC v. La. State*, 624 F.3d 201, 210 (5th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)).

"To be plausible, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)) (alteration original). "The complaint need not contain 'detailed factual allegations,' but must state 'more than mere labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *PSKS, Inc. v. Leegin Creative Leather Prods., Inc.*, 615 F.3d 412, 417 (quoting *Twombly*, 550 U.S. at 555, 127 S. Ct. 1955). "Where a complaint pleads facts that are 'merely consistent with'

a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Iqbal*, 129 S. Ct. at 1949).  Phrased differently: "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Hershey*, 610 F.3d at 245 (quoting *Iqbal*, 129 S. Ct. at 1949).

When determining whether a plaintiff has stated a valid claim for relief, the Court must "accept all well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff." *Great Lakes Dredge & Dock Co. LLC*, 624 F.3d at 210 (citing *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008)).  However, the Court will not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Id.* (quoting *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007)).  Legal conclusions may provide "the complaint's framework, [but] they must be supported by factual allegations." *Iqbal*, 129 S. Ct. at 1940.  A plaintiff must provide more than "'threadbare recitals of a cause of action's elements, supported by mere conclusory statements,' which 'do not permit the court to infer more than the mere possibility of misconduct.'" *Hershey*, 610 F.3d at 246 (quoting *Iqbal*, 129 S. Ct. at 1949-50).

In a diversity case, the Court applies state substantive law and federal pleading standards.  *Ashland Chem. v. Barco Inc.*, 123 F.3d 261, 265 (5th Cir. 1997). Furthermore, "[a] federal court sitting in diversity follows the choice of law rules of the state in which it sits."

6

*Sorrels Steel Co., Inc. v. Great Southwest Corp.*, 906 F.2d 158, 167 (5th Cir. 1990). Generally, Mississippi courts "will give effect to an express agreement that the laws of a specified jurisdiction shall govern, particularly where some material element of the contract has a real relation to, or connection with, such jurisdiction." *Williamson Pounders Architects PC v. Tunica Cnty., Miss.*, 597 F.3d 292, 295 (5th Cir. 2010) (quoting *Miller v. Fannin*, 481 So. 2d 261, 262 (Miss. 1985)). "This general principle is 'respected in the absence of anything violating the public policy of the forum jurisdiction.'" *Id.* The transportation agreement at the heart of this dispute provides that Virginia law shall govern its interpretation and performance thereunder. Accordingly, the Court shall apply Virginia's substantive law.

B.      *Count I – The Fuel Surcharge*

In Count I of the Complaint, Plaintiff alleges that Defendant imposes percentage-of-rate fuel surcharges to its coal shipments, while at the same time recovering fuel costs through quarterly rate adjustments. Plaintiff alleges that this constitutes a breach of Defendant's obligations under Article 11 of the contract to engage in reasonable practices with regard to railroad services. Plaintiff contends that Defendant has recovered a windfall amounting to approximately $10,000,000.00, exclusive of interest, throughout the term of the transportation contract.

Generally speaking, the Surface Transportation Board has regulatory jurisdiction over transportation by rail carrier. 49 U.S.C. § 10501(a). The Board's jurisdiction over

transportation by rail carrier with respect to rates, practices, and services is exclusive. 49 U.S.C. § 10501(b). However, "rail carriers providing transportation subject to the jurisdiction of the Board . . . may enter into a contract with one or more purchasers of rail services to provide specified services under specified rates and conditions." 49 U.S.C. § 10709(a). A party to such a contract "shall have no duty in connection with services provided under such contract other than those duties specified by the terms of the contract." 49 U.S.C. § 10709(b). "A contract that is authorized by [Section 10709], and transportation under such contract, shall not be subject to" the provisions of 49 U.S.C. §§ 10101 et seq., "and may not be subsequently challenged before the Board or in any court on the grounds that such contract violates" said provisions. 49 U.S.C. § 10709(c)(1).

In its Motion to Dismiss, Defendant argues that Count I of the Complaint should be dismissed for two reasons. The Court need only address Defendant's first argument: that the fuel surcharge at issue is permitted by the plain language of the transportation contract. Article 13 of the contract and its related appendices provide base transportation rates for the transportation of commodities. Article 14 is an "Adjustment Clause," which provides:

> Commencing April 1, 2007, the transportation rates hereunder . . . shall be adjusted quarterly, upward or downward, on each January 1, April 1, July 1, and October 1 during the Contract term by 90% of the percentage change in the Rail Cost Adjustment Factor (Unadjusted) ("RCAFU") from one quarter to the next quarter; provided, however, that the transportation rates hereunder shall not in any case be adjusted below the respective Base Rates.

Article 15 is a fuel surcharge provision, which provides:

> In the event the average per-barrel monthly price of West Texas Intermediate Crude Oil (the "WTI Average Price") exceeds $64.00 as calculated using the daily prices published in The Wall Street Journal and as further described below, [Defendant] will assess a fuel surcharge on all line hail freight charges under this Contract as set forth in this Article 15 (the "Fuel Surcharge").

> The applicable Fuel Surcharge percentage shall be applied to each shipment having a bill of lading dated on or after the 1st day of the second calendar month following the calendar month of a given WTI Average Price calculation. The Fuel Surcharge will change monthly per [a table included in the contract].

In summary, Article 14 provides that the transportation rates imposed by the contract were to be adjusted quarterly – whether upward or downward – based on changes in the cost of transportation, provided that they were never to drop below the base rates. At the same time, Article 15 provides that a fuel surcharge must be applied to each shipment based on the cost of crude oil.

The source of the parties' dispute lies in Article 11, which provides: "[Norfolk Southern] shall have the same obligations with respect to rail service hereunder as if transportation services under this Contract were regulated under the terms of the Interstate Commerce Act." Plaintiff contends that this clause obligated Defendant to abide by the Board's January 25, 2007, decision that "computing rail fuel surcharges as a percentage of a base rate is an unreasonable practice." *Rail Fuel Surcharges*, 2007 STB LEXIS 39 at *1. Phrased differently, Plaintiff contends that Defendant was subject to the Board's decision because it agreed to be regulated by the Board.

Defendant argues that Plaintiff's interpretation of Article 11 is contradictory to the provision's express terms, that the Board expressly acknowledged that its decision did not apply to private contracts, and that such an interpretation of Article 11 would render Articles 14 and 15 meaningless.

Under Virginia law:

> [A] contract is construed as written, without adding terms that were not included by the parties. When the terms in a contract are clear and unambiguous, the contract is construed according to its plain meaning. Words that the parties used are normally given their usual, ordinary, and popular meaning. No word or clause in the contract will be treated as meaningless if a reasonable meaning can be given to it, and there is a presumption that the parties have not used words needlessly.

*Uniwest Costr., Inc. v. Amtech Elevator Servs.*, 699 S.E.2d 223, 229 (Va. 2010) (quoting *PMA Capital Ins. Co. v. US Airways, Inc.*, 626 S.E.2d 369, 372-73 (Va. 2006)). "A contract's provisions are to be harmonized when possible, [and] effect is to be given to every stipulation when it can reasonably be done." *Id.* (quoting *Virginia Ry. Co. v. Hood*, 146 S.E. 284, 285 (Va. 1929)).

Article 10 of the contract – wholly neglected by the parties in their briefing – addresses this issue:

> Shipments moving under the terms of this Contract are subject to all classifications, tariffs or successor documents, and all government, AAR and carrier rules and regulations that would apply if this Contract were not in effect (collectively, the "Incorporated Provisions"), as such Incorporated Provisions may be promulgated or amended from time to time. The Incorporated Provisions shall specifically include, but shall not be limited to,

> NS Conditions of Carriage #2-F, all NS Tariffs and Conditions listed therein, and any supplements thereto or successor versions thereof; provided however, that the fuel surcharge that shall apply to the rates contained in this Contract shall be that provided in Article 15. Where any Incorporated Provision conflicts with this Contract, the provisions of this Contract will control.

Therefore, Article 10 provides that all government regulations which would apply if the contract did not exist are incorporated into the contract's terms, including regulations or amendments not yet promulgated at the time of execution. However, it excepts Article 15 – the fuel surcharge – from being affected by any incorporated terms. Furthermore, Article 10 provides that if any incorporated government regulation conflicts with the contract, the contract's provisions control.

"[T]he primary focus in considering disputed contractual language is for the court to determine the parties' intention, which should be ascertained, whenever possible, from the language the parties employed in the contract." *Virginia Electric & Power Co. v. Norfolk Southern Railway Co.*, 683 S.E.2d 517, 525 (Va. 2009) (citing *Flippo v. CSC Assocs. III, L.L.C.*, 547 S.E.2d 216, 226 (Va. 2001); *Langman v. Alumni Ass'n of the Univ. of Va.*, 442 S.E.2d 669, 674 (Va. 1994)). If possible, the Court must harmonize the contract's provisions and reasonably give effect to every stipulation. *Uniwest Constr., Inc.*, 699 S.E.2d at 229. The contract provides for a percentage-of-rate fuel surcharge, and it provides that the fuel surcharge applies regardless of subsequently promulgated government regulations. While Articles 10 and 11 may incorporate some regulations promulgated by the Surface

11

Transportation Board, the contract provides that it does not incorporate regulations which would nullify the fuel surcharge imposed by Article 15. Therefore, the Board's decision had no effect on Article 15's validity or enforceability.

Plaintiff also asserts the contract defense of duress, but, rather than arguing that it entered the contract under duress, Plaintiff argues that it continued to make payments pursuant to the contract under duress. As this argument relates to Defendant's "voluntary payment doctrine" argument, which the Court does not address, it is moot.

For all the reasons stated above, the Court finds that the rail transportation contract at issue clearly provides for the imposition of a percentage-of-rate fuel surcharge. The Surface Transportation Board's January 25, 2007, decision in Ex Parte No. 661 is inapplicable, pursuant to 49 U.S.C. § 10709 and Article 10 of the contract. Accordingly, the Court grants Defendant's Motion to Dismiss with respect to Count I of the Complaint.

C.     *Count III – Service*

In Count III of the Complaint, Plaintiff alleges that Defendant failed to provide transportation services with "reasonable dispatch" by: 1) failing to load Plaintiff's railcars; 2) intentionally parking or idling Plaintiff's railcars; 3) failing to provide services within a reasonable time after Plaintiff's railcars were loaded and/or unloaded; and 4) exposing Plaintiff's railcars to excessive delays in the course of performing repairs and/or maintenance on the railcars. Plaintiff contends that these breaches of contract resulted in

delivery shortfalls in the amount of approximately 130,000 tons of coal, which Plaintiff will require to transport at a substantially increased rate. In response, Defendant argues that Plaintiff's claims in Count III of the Complaint are preempted by 49 U.S.C. § 11706, the Carmack Amendment as codified in the Interstate Commerce Commission Termination Act ("ICCTA"), Pub. L. No. 104-88, 109 Stat. 803 (codified in sections of 11, 45, and 49 U.S.C.).

The ICCTA was enacted in 1996, abolishing the Interstate Commerce Commission (ICC) and creating the Surface Transportation Board to regulate rail transportation in the United States. *Elam v. Kan. City S. Ry.*, 2011 U.S. App. LEXIS 5100, at *9-*10 (5th Cir. Mar. 15, 2011). Pursuant to the ICCTA, the Board has exclusive jurisdiction over "transportation by rail carriers, and the remedies provided in this part with respect to rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes, services, and facilities of such carriers." 49 U.S.C. § 10501(b)(1). Additionally, the ICCTA expressly provided that the "remedies available at the [Board] dealing with 'rates, classifications, rules, . . . practices, routes, services, and facilities of such carriers,' are exclusive." *Franks Inv. Co. LLC v. Union Pac. R.R. Co.*, 593 F.3d 404, 409 (5th Cir. 2010); *see also* 49 U.S.C. § 10501(b)(2).

The Fifth Circuit Court of Appeals recently held that the ICCTA "completely preempts state laws (and remedies based on such laws) that directly attempt to manage or govern a railroad's decisions in the economic realm." *Elam*, 2011 U.S. App. LEXIS 5100 at

*18. However, as previously mentioned, the ICCTA also provides that rail carriers and purchasers of rail services may enter into transportation contracts, that parties to such contracts have no duty in connection with services provided under such contract other than specified by the contract, and that the exclusive remedy for any alleged breach of contract is an action in the appropriate state or district court. 49 U.S.C. § 10709.

Plaintiff and Defendant entered such a contract, and the contract included a provision which incorporated all government rules and regulations which would apply if the Contract were not in effect, provided that in the event of a conflict, the contract controls. Defendant admits that the transportation contract at issue is subject to 49 U.S.C. § 10709's exemption from regulation, and that contracts entered pursuant to 49 U.S.C. § 10709 are not typically subject to preemption. However, Defendant argues that the contract's provisions incorporating federal law subject it to preemption, citing *Am. Rock Salt Co., LLC v. Norfolk S. Corp.*, 387 F. Supp. 2d 197, 201 (W.D.N.Y. 2005).

The contract provision cited by Defendant in support of this argument – Article 11 – clearly and unambiguously incorporates duties and obligations for Defendant, without incorporating any concomitant remedies for breach thereof. Accordingly, the parties to the present action appear to have drafted a contract which achieves the result argued by the plaintiff in *American Rock Salt* – the incorporation of duties/obligations from federal law without preempting a state law breach of contract action. *See Id.* at 201. Indeed, the Fifth

Circuit has previously held that rail transportation contracts can incorporate ICCTA "provisions by reference yet still fall outside the STB's jurisdiction." *PCI Transp. Inc. v. Fort Worth & W. R.R. Co.*, 418 F.3d 535, 541-42 (5th Cir. 2005). At least one other federal court has held that the ICCTA only preempts "regulation," which does not include "voluntary agreements between private parties." *PCS Phosphates Co. v. Norfolk S. Corp.*, 559 F.3d 212, 281 (4th Cir. 2009). Preemption of actions seeking the enforcement of rail transportation contracts would be contradictory to the purpose of Section 10709, which expressly requires that such contracts be enforced in state or federal court. *Id.* at 218-19; *see also* 49 U.S.C. § 10709(c)(2).

Therefore, the Court concludes that the ICCTA does not preempt Plaintiff's breach of contract action merely because the parties incorporated related duties and obligations in the transportation contract. Indeed, Section 10709 provides that Plaintiff's proper remedy is a breach of contract action. Accordingly, the Court denies Defendant's Motion to Dismiss as to Count III of the Complaint.

**D.      Count IV – Breach of Implied Covenant of Good Faith**

"In Virginia, the elements of a claim for a breach of an implied covenant of good faith and fair dealing are (1) a contractual relationship between the parties, and (2) a breach of the implied covenant." *Enomoto v. Space Adventures, Ltd.*, 624 F. Supp. 2d 443, 450 (E.D. Va. 2009) (citing *Charles E. Brauer Co. v. NationsBank of Va., N.A.*, 466 S.E.2d 382, 386 (Va.

1996)). "In Virginia, every contract contains an implied covenant of good faith and fair dealing." *Id.* (citing *Va. Vermiculite, Ltd. v. W.R. Grace & Co.*, 156 F.3d 535, 542 (4th Cir. 1998); *Penn. Life Ins. Co. v. Bumbrey*, 665 F. Supp. 1190, 1195 (E.D. Va. 1987)). However, "when parties to a contract create valid and binding rights, an implied covenant of good faith and fair dealing is inapplicable to those rights." *Ward's Equip. v. New Holland N. Am.*, 493 S.E.2d 516, 520 (Va. 1997). "Generally, such a covenant cannot be the vehicle for rewriting an unambiguous contract in order to create duties that do not otherwise exist." *Id.*

While the "duty of good faith does not prevent a party from exercising its explicit contractual *rights*, a party may not exercise contractual *discretion* in bad faith, even when such discretion is vested solely in that party." *Va. Vermiculite, Ltd.*, 156 F.3d at 542. The Virginia Supreme Court has described good faith as "honesty in fact in the conduct or transaction concerned." *Charles E. Brauer Co.*, 466 S.E.2d at 386. Accordingly, a plaintiff pursuing such a claim must allege dishonesty in fact. *Id.*

In Count IV of the Complaint, Plaintiff contends that Defendant breached an implied covenant of good faith and fair dealing by knowingly applying a percentage-of-rate fuel surcharge to Plaintiff's base rates while also adjusting the base rates pursuant to an adjustment clause with a fuel component. Plaintiff argues that Defendant intentionally disregarded its obligations under Article 11 of the contract by imposing both the fuel surcharge and adjustment clause. As the Court has already noted, the contract requires that

both the fuel surcharge and adjustment clause be applied, and Article 10 expressly provides that the contract takes priority over any incorporated federal regulations in conflict with the contract's clear provisions. Plaintiff admits that it was aware that the contract required a fuel surcharge and adjustment clause prior to entering it, but Plaintiff executed the contract regardless. Therefore, there is no dispute that Defendant has not exhibited any dishonesty or bad faith throughout the parties' contractual relationship with respect to the fuel surcharge. Accordingly, the Court grants Defendant's Motion to Dismiss with respect to Count IV's allegations regarding the imposition of a fuel surcharge.

Plaintiff also alleges that Defendant breached its duty of good faith and fair dealing by incorrectly calculating adjustments to the Base Rates in a manner that allowed it to over-recover under the Agreement, enhancing its own profits. These factual allegations concern the sort of bad faith exercise of discretion described in *Va. Vermiculite, Ltd. v. W.R. Grace & Co.*, 156 F.3d 535, 542 (4th Cir. 1998). Accordingly, Plaintiff's factual allegations regarding Count II – as incorporated by reference in Count IV – are sufficient to make out a plausible claim for breach of an implied covenant of good faith and fair dealing.

Plaintiff also alleges that Defendant breached its duty of good faith and fair dealing by failing to load railcars, intentionally parking and/or idling railcars, delaying railcar maintenance and/or repair, and failing to provide timely service for railcars, causing Plaintiff to suffer delivery shortfalls. Plaintiff contends that Defendant knew or should have

known that Plaintiff would experience such shortfalls as a result of its failure to provide appropriate service. To the extent Plaintiff alleges that Defendant intentionally failed to provide proper service, Plaintiff has plead sufficient facts to make out a plausible claim for breach of an implied covenant of good faith and fair dealing. Accordingly, the Court grants in part and denies in part Defendant's Motion to Dismiss as to Count IV of the Complaint.

In summary, the Court grants in part and denies in part Defendant's Motion to Dismiss. The motion is granted as to Count I of the Complaint, but it is denied as to Count III. Additionally, the Court grants Defendant's Motion to Dismiss as to Plaintiff's allegations in Count IV related to the imposition of a fuel surcharge, but the Court denies Defendant's Motion to Dismiss as to Plaintiff's allegations regarding Defendant's alleged self-serving exercise of discretion in applying adjustments to the base rates, and Defendant's alleged intentional failure to provide proper service.

### III. MOTION FOR A MORE DEFINITE STATEMENT AS TO COUNT II

In Count II of the Complaint, Plaintiff alleged that Defendant failed to properly apply the quarterly rate adjustments imposed by Article 14 of the contract. Plaintiff contends that Defendant increased the rate levels using an inflation adjustment that did not properly reflect the intended adjustment of the base rates under Article 14, resulting in overcharges. Defendant filed a Motion for a More Definite Statement [25], arguing that the Complaint is unclear as to whether Plaintiff accuses it of employing the wrong adjustment

18

index, committing a mathematical error in computing adjusted rates, or some other dispute. Accordingly, Defendant requests that the Court order Plaintiff to plead its interpretation of the Agreement, list each instance in which Defendant allegedly failed to properly apply the quarterly adjustments to the base rates as required by Article 14 of the contract, and specify the manner in which each adjustment purportedly violated the contract.

In response, Plaintiff asserted that it does not allege that Defendant applied the wrong adjustment index. Rather, Plaintiff contends that Defendant miscalculated the quarterly adjustments to the base rates. More specifically, Plaintiff argues that Defendant misused the "rate floor" provision of Article 14[1] by improperly adjusting the rate to the higher of 1) the base rate, or 2) the rate that would have been used as the base rate had the adjustor been performed on a running basis throughout the life of a contract. Plaintiff included the following illustration:

> [I]n a quarter where the application of the index would call for a rate reduction of $1.00 per ton of transported coal, which . . . if applied to the contract would bring that rate $0.50 below the Base Rate floor, the rate [Plaintiff] should be charged remains the Base Rate because of [Article 14's] floor provision. However, in the next succeeding quarter where the adjustor calls for a rate increase of $0.75, the rate [sh]ould be increased by only $0.25 per ton of transported coal because the $0.50 per ton not taken in the preceding Quarter should be reflected in the cumulative adjustment of the

---

[1]As explained above, Article 14 permits Defendant to adjust the transportation rates upward or downward, depending on changes in the cost of transportation. The contract provides, however, that the rates are never to drop below the base rates.

Base Rate.

In other words, Plaintiff contends that if Defendant recovers a windfall in one quarter because of Article 14's floor provision, it should discharge that windfall, so to speak, by not fully adjusting rates upward in later quarters. Plaintiff argues that Defendant's failure to calculate adjustments on a running or cumulative basis was inconsistent with the language and intent of Article 14.

Despite Plaintiff's explanation, Defendant maintains that Rule 12(e) relief is appropriate as it intends to file a dispositive motion under either Rule 12(b)(6) or 12(c) as to Count II, and the Court would not be permitted to rely on allegations contained in briefing "as a surrogate for allegations that are missing from [the] complaint." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 327 (5th Cir. 2002). Rule 12(e) provides:

> A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response. The motion must be made before filing a responsive pleading and must point out the defects complained of and the details desired.

FED. R. CIV. P. 12(e). The Court possesses "considerable discretion" when evaluating a Rule 12(e) motion. *DVI Bus. Credit Corp. v. Crowder*, 193 F. Supp. 2d 1002, 1009 (S.D. Tex. 2002).

For all practical purposes, Defendant now has the explanation it desired and can prepare a response. Therefore, the present purpose of Defendant's motion – upon

20

Defendant's own admission – is to add more factual allegations which the Court may consider upon review of a yet-to-be-filed motion to dismiss. Courts appear to be conflicted over whether this is an appropriate basis for a 12(e) motion.

A Georgia federal court suggested that 12(e) relief was appropriate in this situation: "Where a petition, sufficient to withstand a motion to dismiss, would be vulnerable to such an attack if the case were fully stated, the proper procedure is by motion for more definite statement . . . ." *Rambo v. United States*, 2 F.R.D. 200, 202 (N.D. Ga. 1941). Likewise, a New York federal court granted a 12(e) motion so that a defendant could determine whether the plaintiff's statute of limitations had run, despite plaintiff alleging in the complaint that the action had been plead within the limitations period. *Bucholtz v. Renard*, 188 F. Supp. 888, 892 (S.D.N.Y. 1960). However, other federal courts have held that a Rule 12(e) motion should not be granted if its sole purpose is to provide grounds for an attack on the complaint's sufficiency. *See Int'l Assoc. of Machinists v. United Aircraft Corp.*, 30 F.R.D. 142, 145 (D. Conn. 1962); *Cather v. Ocean Accident & Guarantee Corp., Ltd.*, 10 F.R.D. 437, 438-39 (D. Neb. 1950); *Gumbart v. Waterbury Club Holding Corp.*, 27 F. Supp. 228, 230 (D. Conn. 1939); *E. I. Du Pont De Nemours & Co. v. Dupont Textile Mills, Inc.*, 26 F. Supp. 236, 237 (M.D. Penn. 1939).

In this case, the Court is inclined to grant the motion. The allegations of the Complaint only vaguely resemble Plaintiff's explanation provided in briefing. It is clear

that Defendant could not have ascertained what Plaintiff intended to plead without additional explanation. Indeed, the Court did not discern Plaintiff's position until it received Plaintiff's briefing on the 12(e) motion. While Defendant may now have the explanation it desired, the allegations contained in the Complaint remain vague and inscrutable.

Furthermore, amending the Complaint would not present any hardship or prejudice to Plaintiff. Plaintiff devoted most of its briefing on this motion to explaining its position regarding the proper method of applying Article 14's adjustment and rate floor provisions, rather than providing reasons why it should not provide a more definite statement. Sufficiently defining the issues of the case serves the best interests of both parties and can only serve to promote efficiency as the case proceeds.

For all of the above reasons, the Court grants in part and denies in part Defendant's Motion for More Definite Statement of Count II [15]. Within ten (10) days of the entry of this order, Plaintiff shall file an Amended Complaint that provides a full account of its allegations pertaining to Count II of the Complaint. Plaintiff shall specify the manner in which Defendant calculated the application of the adjustments to the base rate and why Plaintiff believes that calculation was wrong. The Court does not require Plaintiff to list each alleged instance of miscalculation. It is sufficient to provide a general explanation on par with Plaintiff's briefing on the present motion.

## IV. MOTION TO DISMISS COUNTERCLAIM

Defendant asserted a counterclaim in its Answer [12], characterizing Plaintiff's claims as an attempt to supplant the terms of the transportation contract with regulations applicable to common carriers not party to a Section 10709 contract. Defendant argues that if the Court agrees with Plaintiff and invalidates Article 15, then Plaintiff should be obligated to pay common carrier rates otherwise applicable to its shipments, in an amount to be proven at trial.

Plaintiff raised several arguments in its Motion to Dismiss [27] the counterclaim, but it is only necessary for the Court to address one of them. Plaintiff contends that the counterclaim is predicated upon misrepresentations regarding Plaintiff's claims. Specifically, Plaintiff avers that it only seeks the invalidation of Article 15, and that the dispute as to Articles 13 and 14 relates to their interpretation and whether Defendant has breached them. Defendant did not respond to this aspect of Plaintiff's motion and used the majority of its briefing to bolster its argument as to Article 15's validity.

The Court has already ruled that Article 15 is valid and enforceable. Therefore, the Court dismissed Count I of the Complaint. After consideration of the pleadings and various briefs that have been filed in this matter, it is apparent to the Court that Plaintiff does not seek the invalidation of any other aspects of the transportation contract. Count II and Count III – the only remaining counts which pertain to specific provisions of the contract

– present mere disputes over interpretation, rather than claims that the provisions themselves are invalid. Count IV pertains to an implied duty of good faith and fair dealing. Defendant contends in its counterclaim that Plaintiff seeks to invalidate the base rate provision and adjustment clause in addition to the fuel surcharge provision. However, nothing in Plaintiff's briefing or Complaint supports such an argument.

As Count I was the only count which sought the invalidation of a contract provision and the Court has dismissed it, Defendant's counterclaim is moot. Accordingly, the Court grants Plaintiff's Motion to Dismiss Counterclaim [27].

### V. CONCLUSION

For all the reasons stated above, the Court grants in part and denies in part Defendant's Motion to Dismiss [13]. Specifically, the Court:

- grants the motion as to Count I of the Complaint;

- denies the motion as to Count III of the Complaint;

- grants the motion as it pertains to Count IV's allegations concerning Article 15, the fuel surcharge provision; and

- denies the motion as it pertains to Count IV's allegations concerning Defendant's alleged self-serving exercise of discretion in applying adjustments to the base rates and intentional failure to provide proper service.

Additionally, the Court grants in part and denies in part Defendant's Motion for a More Definite Statement [15]. Within ten (10) days of the entry of this Opinion and Order, Plaintiff shall file an Amended Complaint that provides a full account of its allegations pertaining to Count II. Plaintiff shall specify the manner in which Defendant calculated the application of the adjustments to the base rate and why Plaintiff believes that calculation was wrong. The Court does not require Plaintiff to list each alleged instance of miscalculation. It is sufficient to provide a general explanation on par with Plaintiff's briefing on the present motion.

Finally, the Court finds that Defendant's counterclaim is moot, and, therefore, it grants Plaintiff's Motion to Dismiss [27] it.

SO ORDERED AND ADJUDGED this 9th day of May, 2011.

*s/ Keith Starrett*
UNITED STATES DISTRICT JUDGE