**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION**

**SOUTH MISSISSIPPI ELECTRIC
POWER ASSOCIATION**                                                                                **PLAINTIFF**

**v.**                                         **CIVIL ACTION NO. 2:10-CV-310-KS-MTP**

**NORFOLK SOUTHERN RAILWAY
COMPANY**                                                                        **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

The Court now considers Defendant's Motion for Judgment on the Pleadings [61]. For the reasons stated below, the motion is **granted in part and denied in part.**

**I. BACKGROUND**

Plaintiff is an electric generation and transmission cooperative which operates a coal-fired generating station – Plant Morrow – near Richburg, Mississippi. Defendant, a railroad company, has been the sole rail transportation provider serving Plant Morrow since it became operational in 1978.

On December 21, 2006, Plaintiff and Defendant entered into a coal transportation contract (the "Agreement") in which Defendant agreed to transport coal from mines and mine origin groups in Kentucky, Virginia, West Virginia, Tennessee, and Alabama to Plant Morrow. The Agreement became effective on January 1, 2007, and expired by its own terms on December 31, 2010. The Agreement provided base transportation rates for transporting coal to the plant, and it required quarterly adjustments of the base rates according to cost indices included therein. The Agreement also imposed a percentage-of-rate fuel surcharge. Prior to entering the Agreement, Plaintiff objected to Defendant's imposition of a fuel surcharge on top of quarterly rate adjustments and joined a group

1

of other shippers in seeking the Surface Transportation Board's invalidation of percentage-of-rate fuel surcharges. However, despite objecting to the fuel surcharge and seeking its invalidation with the Board, Plaintiff agreed to the Agreement's terms.

On January 25, 2007, the Board issued a decision in which it concluded that "computing rail fuel surcharges as a percentage of a base rate is an unreasonable practice, and we direct carriers to change this practice." *Rail Fuel Surcharges*, Ex Parte No. 661, 2007 STB LEXIS 39, *1, 2007 WL 201205 (S.T.B. Jan. 25, 2007). The Board further concluded "that the practice of 'double dipping,' i.e., applying to the same traffic both a fuel surcharge and a rate increase that is based on a cost index that includes a fuel cost component . . . is an unreasonable practice, and we direct carriers to change this practice as well." *Id.* However, the Board explicitly declined to impose the new rule retroactively. *Id.* at *22-*23. It noted:

> In view of the long history of rate-based fuel surcharges in the rail industry, we do not believe that railroads can be faulted for assuming that fuel surcharges calculated as a percentage of the base rate were permissible. Indeed, in the mid-1970s, the ICC specifically declined to require carriers to tie their fuel surcharges to mileage. Although conditions have changed since the mid-1970s, railroads may have reasonably relied on that precedent in formulating their fuel surcharge programs.

*Id.* at 22 (citing *Expedited Procedures for the Recovery of Fuel Costs*, 350 I.C.C. 563, 570-71 (1975)). Finally, the Board directly addressed whether the new rules applied to traffic handled under transportation contracts, ruling: "Under 49 U.S.C. § 10709, we have no authority to regulate rail rates and services that are governed by a contract. Therefore, our findings and actions here apply only to regulated common carrier traffic." *Id.* at *31.

On December 29, 2010 – after the Agreement had expired – Plaintiff initiated the present action, alleging that Defendant breached the Agreement and its implied duty of good faith and fair dealing.

The Court addressed several motions in a Memorandum Opinion and Order [41] entered on May 9, 2011. *S. Miss. Elec. Power Ass'n v. Norfolk S. Ry. Co.*, No. 2:10-CV-310-KS-MTP, 2011 U.S. Dist. LEXIS 49901 (S.D. Miss. May 9, 2011). The Court granted Defendant's Motion to Dismiss [13] as to Count I of the Complaint and Count IV's allegations concerning the fuel surcharge provision. *Id.* at *17, *23. However, the Court denied the motion as to Count III and Count IV's allegations concerning Defendant's application of adjustments to the base transportation rates. *Id.* at *21, *24-*25. The Court also granted in part and denied in part Defendant's Motion for a More Definite Statement [15] and granted Plaintiff's Motion to Dismiss [27]. *Id.* at *30-*33.

Plaintiff filed a Motion for Reconsideration [52] of the May 9, 2011, Memorandum Opinion and Order [13] as it relates to Counts I and IV of the Complaint, but the Court denied Plaintiff's Motion for Reconsideration on August 4, 2011.

## II. DISCUSSION

The Court now considers Defendant's Motion for Judgment on the Pleadings [61]. Defendant seeks judgment as to Counts II and IV of the Complaint.

*A.     Standard of Review*

Rule 12(c) provides: "After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). The Court evaluates a "motion under Rule 12(c) for judgment on the pleadings using the same standard as a motion to dismiss under Rule 12(b)(6) for failure to state a claim." *Gentilello v. Rege*, 627 F.3d 540, 543-44 (5th Cir. 2010). Therefore, to survive the motion, Plaintiff's "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Great Lakes Dredge & Dock Co. LLC v. La. State*, 624 F.3d 201, 210 (5th Cir. 2010) (punctuation omitted). "To

3

be plausible, the complaint's [f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* (punctuation omitted, alteration original). "The complaint need not contain detailed factual allegations, but must state more than mere labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *PSKS, Inc. v. Leegin Creative Leather Prods., Inc.*, 615 F.3d 412, 417 (punctuation omitted). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Hershey v. Energy Transfer Partners, L.P.*, 610 F.3d 239, 245 (5th Cir. 2010).

The Court must "accept all well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff." *Great Lakes Dredge & Dock Co. LLC*, 624 F.3d at 210. However, the Court will not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Id.* Legal conclusions may provide "the complaint's framework, [but] they must be supported by factual allegations." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009). A plaintiff must provide more than "threadbare recitals of a cause of action's elements, supported by mere conclusory statements, which do not permit the court to infer more than the mere possibility of misconduct." *Hershey*, 610 F.3d at 246 (punctuation omitted).

B.     *Count II – Miscalculated Quarterly Adjustments*

Count II is a breach of contract claim regarding Article 14 of the Agreement – the "Adjustment Clause" – which provides:

> Adjustment Clause. Commencing as of April 1, 2007, the transportation rates hereunder, as well as charges listed in Articles 19(a), 22, 23, 24, and 26 (the "Charges"), shall be adjusted quarterly, upward or downward, on each January 1, April 1, July 1, and October 1 during the Contract Term by 90% of the percentage change in the Rail Cost Adjustment Factor (Unadjusted) ("RCAFU") from one quarter to the next quarter; provided, however, that the transportation rates hereunder

>   shall not in any case be adjusted below the respective Base Rates, and the Charges shall not in any case be adjusted below the Base Values. The term "Base Values" shall mean the value of the Charges as set forth on the face of this Contract. In computing the adjusted transportation rate and Charges, any fraction of a cent less than one-half shall be dropped, and any fraction equal to or greater than one-half of a cent shall be increased to the next whole cent. In the event that RCAFU is not available, for any reason, during a quarterly period, then the parties shall use the AAR Railroad Cost Recovery Index for the United States.

Plaintiff alleges that Defendant breached Article 14 in three ways, each of which the Court shall address.

First, Plaintiff argues that Defendant breached Article 14 by miscalculating the quarterly adjustments. Plaintiff contends that Defendant should have calculated the quarterly adjustments on a running basis through the life of the Agreement, and that Defendant's failure to do so was contrary to the language and intent of Article 14. In other words, Plaintiff argues that if Defendant recovered a windfall in one quarter because of Article 14's floor provision, it should have discharged that windfall by foregoing future upward adjustments.

However, as Plaintiff admits in its brief, Article 14 imposes no such requirement on Defendant, and "Article 14 . . . is silent as to this specific issue." In Plaintiff's own words: the "parties did not address" this issue in the "specific language of Article 14." Therefore, Plaintiff implicitly admits that Defendant complied with the express terms of Article 14. Nonetheless, Plaintiff argues that judgment on the pleadings would be inappropriate because the terms of the Agreement do not express the parties' true intent. The Court's "primary focus in considering disputed contractual language is . . . to determine the parties' intention . . . ." *Va. Elec. & Power Co. v. Norfolk S. Ry. Co.*, 683 S.E.2d 517, 525 (Va. 2009). The parties' true intent "should be ascertained, whenever possible, from the language the parties employed in the contract." *Id.* Accordingly, if the language of the contract is unambiguous, it is unnecessary – and inappropriate

– for the Court to proceed any further. *Va. Elec. Power Co. v. N. Va. Reg'l Park Auth.*, 618 S.E.2d 323, 326 (Va. 2005) (where contract language is unambiguous, it is inappropriate to resort to extrinsic evidence).

The language of Article 14 is unambiguous. It provides that the transportation rates "shall be adjusted quarterly, upward or downward, . . . by 90% of the percentage change in the Rail Cost Adjustment Factor (Unadjusted) ("RCAFU") from one quarter to the next quarter," but the transportation rates "shall not in any case be adjusted below the respective Base Rates." The terms of the Agreement required that Defendant increase the transportation rates pursuant to increases in the RCAFU. Of course, this result seems to be unfair to Plaintiff, but it is the result dictated by the explicit terms of the contract to which the parties agreed. The Court is required to enforce the contract as agreed to by the parties. Therefore, the Court concludes Defendant did not have the discretion to forego future rate increases to offset the alleged windfall caused by the floor provision. Accordingly, the Court grants Defendant's Motion for Judgment on the Pleadings as to Plaintiff's breach of contract claim stemming from the alleged miscalculation of quarterly rate adjustments.

## C.     *Count II – Rounding Errors*

Next, Plaintiff contends that Defendant breached Article 14 by rounding the percentage changes in the RCAFU index to a tenth of a percentage point, rather than to a one-hundredth of a percentage point. Article 14 addresses the manner in which the adjusted transportation rates should be rounded: "In computing the adjusted transportation rate and Charges, any fraction of a cent less than one-half shall be dropped, and any fraction equal to or greater than one-half of a cent shall be increased to the next whole cent." However, the Agreement does not address the manner in which the change in the RCAFU should be rounded, if at all. The contract neither requires nor forbids that

the parties round the percentage adjustment to any particular decimal point.

Plaintiff presented two decisions promulgated by the Board in 2010 to announce quarterly changes in the RCAFU. Before the third quarter of 2010, the Board found "that the third quarter 2010 RCAF (Unadjusted) is 1.068, an increase of 0.8 % from the second quarter 2010 RCAF of 1.060." *Quarterly Rail Cost Adjustment Factor*, Ex Parte No. 290, 2010 STB LEXIS 270, at *2 (S.T.B. June 17, 2010). The actual increase in the RCAFU was 0.75471 %,[1] but Defendant used a percentage increase of 0.8 %. Likewise, before the fourth quarter of 2010, the Board found "that the fourth quarter 2010 RCAF (Unadjusted) is 1.104, an increase of 3.4% from the third quarter 2010 RCAF of 1.068." *Quarterly Rail Cost Adjustment Factor*, Ex Parte No. 290, 2010 STB LEXIS 418, at *4 (S.T.B. Sept. 20, 2010). The actual increase in the RCAFU was 3.37078 %,[2] but Defendant used a percentage increase of 3.4 %.

Defendant argues that the Board decisions plainly support the RCAFU percentage changes it used when adjusting the transportation rate, as Defendant employed the percentage increases or decreases which the Board explicitly stated in its opinion. However, Plaintiff argues that the Board merely rounded the actual RCAFU percentage change to the nearest tenth of a percentage point, and that Defendant was required to utilize the actual RCAFU percentage change. The Court finds that the Agreement is ambiguous on this issue, and the Board's quarterly RCAFU adjustment decisions do not provide any guidance as to the parties' intent. Therefore, the Court denies Defendant's Motion for Judgment on the Pleadings with respect to its argument that it complied with Article 14's requirements regarding the appropriate rounding method to be utilized when calculating quarterly

---

[1] $(1.068 - 1.060) / (1.060) = 0.0075471 = 0.75471 \%$

[2] $(1.104 - 1.068) / (1.068) = 0.0337078 = 3.37078 \%$

adjustments to the transportation rates.

### D.     *Rounding Errors – The Voluntary Payment Doctrine*

Nonetheless, Defendant argues that judgment on the pleadings is required as to Plaintiff's claim regarding rounding errors because of the "voluntary payment doctrine." Virginia courts recognize such a doctrine, *Cappetta v. GC Servs. L.P.*, 654 F. Supp. 2d 453, 463 (E.D. Va. 2009), and Virginia's highest court has defined it in this manner:

> Where a person with full knowledge of the facts voluntarily pays a demand unjustly made upon him, though attempted or threatened to be enforced by proceedings, it will not be considered as paid by compulsion, and the party thus paying is not entitled to recover back the money paid, though he may have protested against the unfounded claim at the time of payment made. Where money has been paid under a mistake of facts, or under circumstances of fraud or extortion, or as a necessary means to obtain the possession of goods wrongfully withheld from the party paying the money, an action may be maintained for the money wrongfully exacted. But such action is not maintainable in the naked case of a party making a payment of a demand rather than resort to litigation, and under the supposition that the claim which subsequently turned out to be unauthorized by law, was enforceable against him or his property.

*Wessel, Duval & Co. v. Winborne & Co.*, 99 S.E. 719, 721 (Va. 1919). The doctrine has also been described in this way: "A mistake of law which precludes recovery occurs when a person, with full knowledge of the facts, comes to an erroneous conclusion as to their legal effect." *Williams v. Consolvo*, 379 S.E.2d 333, 336 (Va. 1989). Phrased differently, if a person voluntarily makes a payment based on a mistake of law when they have full knowledge of the facts, the sum is not recoverable.

Plaintiff and Defendant entered a contract on December 21, 2006, establishing rates for the transportation of coal by Defendant to Plaintiff's power plant. The contract became effective on January 1, 2007, and it expired on December 31, 2010. The contract incorporated the terms of Defendant's conditions of carriage. According to the conditions of carriage, when Defendant

extended credit to Plaintiff, Plaintiff agreed "to pay all charges in fifteen (15) days from the date of the freight bill or invoice." The conditions of carriage also provided:

> In the event that [Plaintiff] shall dispute the amount of a bill, [Plaintiff] shall pay to [Defendant] within the credit period the undisputed amount of the bill. [Plaintiff] shall also notify [Defendant] within the credit period of the disputed amount and the basis for the dispute. Payment of bills, or any portion thereof, by [Plaintiff] which later are determined to be incorrect will not prejudice [Plaintiff's] right to seek a refund within the statutory period.

Plaintiff provided general notice to Defendant that it disagreed with the application of Article 15's fuel surcharge, in the form of Plaintiff's pursuit of the matter before the Surface Transportation Board and a letter sent in October 2008, in which a representative of Plaintiff requested that Defendant revoke Article 15. However, there is no indication in the Amended Complaint or its attached exhibits that Plaintiff provided notice to Defendant that it disagreed with the manner in which Defendant rounded the quarterly percentage change in the RCAFU index.

      Accordingly, it is unclear whether Plaintiff was actually aware of the rounding errors when it made the payments. Defendant argues otherwise: ". . . the Amended Complaint and exhibits make clear that SMEPA made the payments with full awareness of the manner in which NS was adjusting and applying the transportation rates . . . ." However, Defendant has not pointed to any allegation of fact in the Amended Complaint or direct evidence in the exhibits attached to the Amended Complaint that show Plaintiff made the payments with full awareness of the rounding method utilized in calculating the quarterly adjustments. Defendant essentially argues that it is reasonable to assume that Plaintiff knew all the relevant facts concerning the rounding of the RCAFU percentage change based on Plaintiff's payment of the invoices and the availability of the information.

      However, at this stage of litigation, the Court's review is limited to the facts alleged in the

Amended Complaint and its attachments, and it must construe those facts in the light most favorable to Plaintiff. *Great Lakes Dredge & Dock Co. LLC*, 624 F.3d at 210. Construing the allegations of the Amended Complaint and its exhibits in the light most favorable to Plaintiff, the Court can not find that Plaintiff had "full knowledge of the facts." *Wessel*, 99 S.E. at 721. Accordingly, Defendant's Motion for Judgment on the Pleadings is denied as to Count II's claim regarding rounding errors.

### D.     *Count II – Charging the Wrong Rate*

In the Amended Complaint, Plaintiff claims that Defendant breached the Agreement by charging Plaintiff the wrong rate in three different quarters during the term of the Agreement, resulting in overcharges of $36,738.00. As Defendant admits in its briefing, a factual dispute exists as to the rates paid by Plaintiff in certain fiscal quarters. Nonetheless, Defendant argues that the Court should enter a judgment on the pleadings in its favor because of the voluntary payment doctrine. The Court rejects this argument for the same reasons stated above. Construing the allegations of the Amended Complaint and its exhibits in the light most favorable to Plaintiff, the Court can not find that Plaintiff had "full knowledge of the facts" concerning the rates charged by Defendant at the time it made the payments. *Id.* Accordingly, Defendant's Motion for Judgement on the Pleadings is denied as to Count II's claim regarding incorrect rates.

### E.     *Count IV – Miscalculated Quarterly Adjustments*

In Count IV of the Amended Complaint, Plaintiff claimed that Defendant breached an implied covenant of good faith and fair dealing by applying the fuel surcharge required by Article 15, miscalculating the quarterly adjustments to the transportation rates required by Article 14, and failing to provide adequate service. The Court already dismissed Plaintiff's claims concerning the

fuel surcharge. Defendant now argues that it is entitled to judgment on the pleadings as to Count IV's claims concerning the miscalculation of quarterly adjustments.

"In Virginia, every contract contains an implied covenant of good faith and fair dealing." *Enomoto v. Space Adventures, Ltd.*, 624 F. Supp. 2d 443, 450 (E.D. Va. 2009). However, "when parties to a contract create valid and binding rights, an implied covenant of good faith and fair dealing is inapplicable to those rights." *Ward's Equip. v. New Holland N. Am.*, 493 S.E.2d 516, 520 (Va. 1997). "Generally, such a covenant cannot be the vehicle for rewriting an unambiguous contract in order to create duties that do not otherwise exist." *Id.* Regardless, while the "duty of good faith does not prevent a party from exercising its explicit contractual *rights*, a party may not exercise contractual *discretion* in bad faith, even when such discretion is vested solely in that party." *Va. Vermiculite, Ltd. v. W.R. Grace & Co.*, 156 F.3d 535, 542 (4th Cir. 1998). Good faith is "honesty in fact in the conduct or transaction concerned." *Charles E. Brauer Co. v. NationsBank of Va., N.A.*, 466 S.E.2d 382, 386 (Va. 1996). Therefore, a plaintiff pursuing such a claim must allege dishonesty in fact. *Id.*

The Court previously denied Defendant's Motion to Dismiss as to Count IV's claims regarding incorrect adjustments to the base transportation rates. *S. Miss. Elec. Power Ass'n*, 2011 U.S. Dist. LEXIS 49901 at *24. The Court held that the limited allegations of Plaintiff's first Complaint concerned the sort of bad faith exercise of discretion described in *Va. Vermiculite, Ltd. v. W.R. Grace & Co.*, 156 F.3d 535, 542 (4th Cir. 1998). *Id.* In the Amended Complaint, Plaintiff alleges that Defendant breached its duty of good faith and fair dealing by intentionally calculating adjustments to the base rates in a manner which allowed it to enhance its own profits. This allegation is broad enough to encompass both Plaintiff's claim that Defendant breached Article 14 by not

11

calculating the quarterly adjustments on a running basis, and Plaintiff's claim that Defendant breached Article 14 by erroneously rounding off the percentage increases in the RCAFU.

First, the Court grants Defendant's Motion for Judgment on the Pleadings as to Count IV insofar as it concerns Plaintiff's claim that Defendant breached Article 14 by not calculating the quarterly adjustments on a running basis. Although the Court previously held that the allegations of Plaintiff's first Complaint concerned the sort of bad faith exercise of discretion forbidden under Virginia law, Plaintiff's subsequent clarification of the claim and the Court's analysis above demonstrate that Defendant possessed no discretion under Article 14. Rather, the Agreement provided that the transportation rates "shall be adjusted quarterly, upward or downward, . . . by 90% of the percentage change in the Rail Cost Adjustment Factor (Unadjusted) ("RCAFU") from one quarter to the next quarter," but the transportation rates "shall not in any case be adjusted below the respective Base Rates." Accordingly, Defendant complied with Article 14's terms, and Plaintiff has not alleged any facts which exhibit the sort of bad faith conduct or dishonesty in fact which constitute a breach of the duty of good faith and fair dealing.

Next, the Court denies Defendant's Motion for Judgment on the Pleadings as to Count IV's claims regarding the alleged rounding errors in Defendant's calculation of the quarterly percentage changes in the RCAFU. As the Court noted above, the contract is silent on this issue, and the facts and exhibits of Plaintiff's Amended Complaint do not show that Plaintiff had the full knowledge necessary for invocation of the voluntary payment doctrine.

### III. CONCLUSION

For the reasons stated above, the Court grants in part and denies in part Defendant's Motion

for Judgment on the Pleadings. Specifically:

- The Court grants the motion as it pertains to Plaintiff's claim that Defendant breached Article 14 of the Agreement by not calculating quarterly adjustments to the transportation rates on a running basis.

- The Court denies the motion as it pertains to Plaintiff's claim that Defendant breached Article 14 of the Agreement by rounding off the quarterly percentage change in the RCAFU to a tenth of a percentage point.

- The Court grants the motion as it pertains to Plaintiff's claim that Defendant breached its implied covenant of good faith and fair dealing by not calculating quarterly adjustments to the transportation rates on a running basis.

- The Court denies the motion as it pertains to Plaintiff's claim that Defendant breached its implied covenant of good faith and fair dealing by rounding off the quarterly percentage change in the RCAFU to a tenth of a percentage point.

SO ORDERED AND ADJUDGED this 11th day of August, 2011.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE